# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF FLORIDA GAINESVILLE DIVISION

**APRIL D. BONDURANT,**

    **Plaintiff,**

vs.                                     Case No.  1:18cv83-MW/CAS

**NANCY A. BERRYHILL,
Acting Commissioner of
Social Security,**

    **Defendant.**

_____/

## REPORT AND RECOMMENDATION

This is a Social Security case referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Local Rule 72.2(D).  It is now before the Court pursuant to 42 U.S.C. § 405(g) for review of the final determination of the Acting Commissioner (Commissioner) of the Social Security Administration (SSA) denying Plaintiff's application for Supplemental Security Income (SSI) benefits pursuant to Title XVI of the Social Security Act.  After consideration of the record, it is recommended that the decision of the Commissioner be affirmed.

## I. Procedural History

On December 2, 2014, Plaintiff, April D. Bondurant, filed an application for SSI alleging disability beginning December 2, 2014, based on bipolar disorder, degenerative disc disease, and PTSD. Tr. 10, 202.[1]

Plaintiff's application was denied initially on February 26, 2015, and upon reconsideration on May 20, 2015. Tr. 10, 54-75. On June 11, 2015, Plaintiff requested a hearing. Tr. 10, 93-95.

On June 14, 2017, Administrative Law Judge (ALJ) M. Hart held a video hearing in which Plaintiff appeared and testified in Gainesville, Florida, and the ALJ presided over the hearing from Jacksonville, Florida. Tr. 10, 32-53. Jackson C. McKay, Jr., an impartial vocational expert, testified during the hearing. Tr. 10, 47-52, 279 (Resume). Pamela C. Dunmore, an attorney, represented Plaintiff. Tr. 10, 32, 34.

On July 20, 2017, the ALJ entered a decision and denied Plaintiff's application for benefits concluding that Plaintiff has not been under a disability since December 2, 2014, the date the application was filed. Tr. 10-21.

On August 8, 2017, Plaintiff requested review of the ALJ's decision.

---

[1] Citations to the transcript/administrative record, ECF No. 10, shall be by the symbol "Tr." followed by a page number that appears in the lower right corner.

Tr. 169-71.  On February 28, 2018, the Appeals Council denied Plaintiff's request for review of the ALJ's decision making it the final decision of the Commissioner.  Tr. 1-5.  *See* 20 C.F.R. § 416.1481.

On May 3, 2018, Plaintiff filed a Complaint with the United States District Court seeking review of the ALJ's decision.  ECF No. 1.  The parties filed memoranda of law, ECF Nos. 19-20, which have been considered.

## II. Findings of the ALJ

The ALJ made several findings:

1. "The claimant has not engaged in substantial gainful activity [SGA] since December 2, 2014, the application date."  Tr. 12.

2. "The claimant has the following severe impairments: affective disorders, anxiety disorders, personality disorders and a history of migraines."  *Id*.  The ALJ considered Plaintiff's history of substance use and determined it was non-severe.  *Id*.

3. "The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1."  Tr. 12.  The ALJ considered the severity of Plaintiff's mental impairments and determined that they singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, and 12.08.  Tr. 13.  The ALJ considered the "paragraph B" criteria and determined that Plaintiff had *moderate* limitation in understanding, remembering, or applying information and in interacting with others; *moderate* limitation with regard to concentrating, persisting, or maintaining pace; and *moderate* limitation for adapting or managing oneself.  Tr. 13-14.  The ALJ also determined the evidence did not establish the presence of the "paragraph C" criteria.  Tr. 14.  The ALJ specifically stated that the

"paragraph B" criteria are not a residual functional capacity [RFC] assessment, but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. *Id.* The ALJ also noted that the mental RFC assessment used at steps 4 and 5 requires a more detailed assessment. *Id.*

4. "[T]he claimant has the [RFC] to perform a full range of work at all exertional levels but with the following non-exertional limitations: the claimant is limited to occupations with no more than a moderate noise intensity level as defined by the Dictionary of Occupational Titles due to a history of migraine headaches; work is limited to simple, routine and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple work related decisions and routine work place changes; and the claimant is limited to no interaction with the public, only occasional interaction with coworkers and only occasional supervision." Tr. 14-15; *see* Tr. 49 (hypothetical posed to vocational expert).

5. "The claimant is capable of performing past relevant work as a Dishwasher (318.687-010) Medium, Unskilled work with an SVP of 2. This work does not require the performance of work-related activities precluded by the claimant's [RFC]." Tr. 19; *see* Tr. 49.[2]

---

[2] "Unskilled work is work which needs little or no judgment to do simple duties that can be learned on the job in a short period of time." 20 C.F.R. § 416.968(a). A Specific Vocational Preparation (SVP) of 1 means "short demonstration only." Dictionary of Occupational Titles (DOT) (4th ed., rev. 1991), Appendix C: Components of the Definition Trailer, § II, SVP. An (SVP) of 2 means "[a]nything beyond short demonstration up to and including 1 month." *Id.* "[SVP] is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Id.* Unskilled work corresponds to an SVP of 1 and 2. SSR 00-4p, 2000 SSR LEXIS 8, at *8 (Dec. 4, 2000). Further, unskilled work is work involving understanding, remembering, and carrying out simple instructions; making simple work-related decision; dealing with changes in a routine work setting; and responding appropriately to supervision, co-workers, and usual work situations. Social Security Ruling (SSR) 85-15, 1985 SSR LEXIS 20, at *10-11 (1985). In part, "[l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 416.967(b). "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c). "Heavy work

6. In the alternative, the ALJ proceeded to step 5 and stated "considering the claimant's age, education, work experience, and [RFC], there are other jobs that exist in significant numbers in the national economy that the claimant also can perform." Tr. 20. The ALJ considered this issue in conjunction with the Medical-Vocational Guidelines (the Grids), section 204.00.[3] *Id*. The ALJ noted that Plaintiff's "ability to perform work at all exertional levels has been compromised by non-exertional limitations," and, "[t]o determine the extent to which these limitations erode the occupational base of unskilled work at all exertional levels," the ALJ asked "the vocational expert whether jobs exist in the national economy for an individual with the claimant's age, education, work experience, and [RFC]." Tr. 20; *see* Tr. 49-50. The vocational expert testified that such an individual could perform several representative occupations including *laundry sorter* and *laundry worker*, both light exertion, unskilled with an SVP of 2 and *stocker,* medium exertion, unskilled with an SVP of 2. *Id.*; *see supra* at n.2.

7. "The claimant has not been under a disability, as defined in the Social Security Act, since December 2, 2014, the date the application was filed." Tr. 21.

## III. Legal Standards Guiding Judicial Review

This Court must determine whether the Commissioner's decision is supported by substantial evidence in the record and premised upon correct legal principles. 42 U.S.C. § 405(g); <u>Chester v. Bowen</u>, 792 F.2d 129, 131

---

involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds. If someone can do heavy work, we determine that he or she can also do medium, light, and sedentary work." 20 C.F.R. § 416.967(d).

[3] Plaintiff has only non-exertional limitations and, as a result, section 204.00 of the Grids provides a framework for decision making. Tr. 20*.* Based on the testimony of the vocational expert and the criteria examined, the ALJ determined that a finding of "not disabled" is appropriate under section 204.00. *Id.*

Case No. 1:18cv83-MW/CAS

(11th Cir. 1986). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); *accord* Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005). "The Commissioner's factual findings are conclusive if supported by substantial evidence." Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir. 2002) (citations omitted).[4]

"In making an initial determination of disability, the examiner must consider four factors: '(1) objective medical facts or clinical findings; (2) diagnosis of examining physicians; (3) subjective evidence of pain and disability as testified to by the claimant and corroborated by [other observers, including family members], and (4) the claimant's age, education, and work history.'" Bloodsworth, 703 F.2d at 1240 (citations

---

[4] "If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it." Phillips v. Barnhart, 357 F.3d 1232, 1240, n.8 (11th Cir. 2004) (citations omitted). "A 'substantial evidence' standard, however, does not permit a court to uphold the Secretary's decision by referring only to those parts of the record which support the ALJ. A reviewing court must view the entire record and take account of evidence in the record which detracts from the evidence relied on by the ALJ." Tieniber v. Heckler, 720 F.2d 1251, 1253 (11th Cir. 1983). "Unless the Secretary has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's 'duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.'" Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981) (citations omitted).

Case No. 1:18cv83-MW/CAS

omitted).  A disability is defined as a physical or mental impairment of such severity that the claimant is not only unable to do past relevant work, "but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); *see* 20 C.F.R. §§ 416.905(a), 416.909 (duration requirement).  Both the "impairment" and the "inability" must be expected to last not less than 12 months.  <u>Barnhart v. Walton</u>, 535 U.S. 212 (2002).

Pursuant to 20 C.F.R. § 416.920(a)(4)(i)-(v), the Commissioner analyzes a claim in five steps:

1. Is the individual currently engaged in substantial gainful activity [SGA]?

2. Does the individual have any severe impairments?

3. Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404, Subpart P?

4. Does the individual have the RFC to perform work despite limitations and are there any impairments which prevent past

relevant work?[5]

    5. Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  Consideration is given to the assessment of the claimant's RFC and the claimant's past relevant work.  If the claimant can still do past relevant work, there will be a finding that the claimant is not disabled.  If the claimant carries this burden, however, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy in light of the claimant's RFC, age, education, and work experience.  Phillips, 357 F.3d at 1237; Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999); Chester, 792 F.2d at 131; MacGregor v. Bowen, 786

---

[5] An RFC is the most a claimant can still do despite limitations.  20 C.F.R. § 416.945(a)(1).  It is an assessment based upon all of the relevant evidence including the claimant's description of her limitations, observations by treating and examining physicians or other persons, and medical records.  Id.  Although an ALJ considers medical source opinions, the responsibility for determining claimant's RFC lies with the ALJ.  20 C.F.R. § 416.946(c); see Cooper v. Astrue, 373 F. App'x 961, 962 (11th Cir. 2010) (unpublished) (explaining claimant's RFC determination "is within the province of the ALJ, not a doctor").

Case No. 1:18cv83-MW/CAS

F.2d 1050, 1052 (11th Cir. 1986); 20 C.F.R. § 416.920(a)(4)(v).  If the Commissioner carries this burden, the claimant must prove that he or she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

    As the finder of fact, the ALJ is charged with the duty to evaluate all of the medical opinions of the record resolving conflicts that might appear.  20 C.F.R. § 416.927.[6]  When considering medical opinions, the following factors apply for determining the weight to give to any medical opinion: (1) the frequency of examination and the length, nature, extent of the treatment relationship; (2) the evidence in support of the opinion, such as "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight" that opinion is given; (3) the opinion's consistency with the record as a whole; (4) whether the opinion is from a specialist and, if it is, it will be accorded greater weight; and (5) other relevant but unspecified factors.  20 C.F.R. § 416.927(b) & (c).

---

[6]  This provision applies to claims filed before March 27, 2017.  For claims filed after that date, section 416.920c, titled "How we consider and articulate medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017," applies.

A claimant bears the burden of proving he or she is disabled, and consequently, is responsible for producing evidence in support of the claim. *See* 20 C.F.R. § 416.912(a); Moore, 405 F.3d at 1211.

## IV. Legal Analysis

**Substantial evidence supports the ALJ's consideration of the evidence and credibility determination.**

A.

Plaintiff argues the ALJ improperly assessed Plaintiff's credibility. ECF No. 19 at 13, 24. Plaintiff's reference to the evidence of record is sparse. *See, e.g., id*. at 3, 24. Plaintiff indicates "[t]he sporadic medical evidence shows that [Plaintiff] is mentally ill and suffers from" several disorders. *Id*. at 3. Plaintiff also notes that she "receives marginally adequate psychiatric care from" several healthcare providers. *Id*. To support her claim, Plaintiff also refers to her testimony before the ALJ. *Id*. at 24. Based upon this information, Plaintiff concludes "there should be no issue as to her inability to make full[-]time employment" and the ALJ's reasons for discrediting her testimony is not based on substantial evidence. *Id*. at 24-25. Plaintiff does not discuss the ALJ's reasons for not giving credence to Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms. *See* Tr. 17.

B.

The ALJ begins a discussion of Plaintiff's RFC with Plaintiff's allegations (including her hearing testimony) that she is disabled. Tr. 15-16. Thereafter, the ALJ considered the medical evidence of record. Tr. 16-19.

The ALJ referred to an October 2014 Baker Act admission at Meridian Behavioral Healthcare, Inc., (Meridian) for Plaintiff and the ensuing diagnoses. Tr. 16, Tr. 309-12. The mental status examination showed she was cooperative, her thought process was within normal limits, she reported symptoms of moderate anxiety and irritability and her affect was constricted and flat, but her memory was grossly intact. *Id*.; *see infra* at 17 n.10 (GAF scores).

Plaintiff had an in-patient hospitalization in November 2014 under the Baker Act at North Florida Regional Medical Center. Tr. 16; 286-93. The impression included suspected psychotic episode and that Plaintiff was being evaluated in the Behavioral Health Unit. The plan includes the notation that Plaintiff "is currently medically stable." Tr. 293.

Plaintiff was voluntarily admitted for inpatient psychiatric treatment at Meridian in December 2014 and "reported having intermittent explosive behavior and anger issues; she also said she had impulse control

problems. She indicated her symptoms have improved with inpatient treatment." Tr. 16, 296-302, 307-08, 313-16; *see infra* at 17 n.10 (GAF scores).

Plaintiff had a follow-up-up examination in January 2015 at Meridian and "reported being more stable on medication and with medication compliance." Tr. 16, 303-05. Plaintiff continued ongoing follow-up treatment and Plaintiff reported she stopped smoking cannabis in February 2015 and "reported an improvement in mod an [sic] anger with medication regimen. She reported increased anxiety and medications were adjusted. Id. Diagnoses included Bipolar II Disorder and Unspecified Anxiety Disorder." Tr. 16, 322; *see* Tr. 332-35 (Feb. 2015 notes).

The ALJ noted that Plaintiff "reported exacerbations in her symptoms related to her immediate family members and close acquaintances. For example, in April and June 2015, a good response to the treatment regimen is generally indicated. While the claimant reported having high stress and anxiety November 2015 after an unfortunate break-up, no disabling objective findings are documented for 12 continuous months (Exhibit 4F/10, 23, 25, 36)." *See* Tr. 16-17, 336, 349, 351, 362. In January 2016, Plaintiff "is noted as stable and doing well on medications." Tr. 17, 354-56.

"Despite a reported exacerbation in May 2016, she stated that her medication[s] were helping."  Tr. 17, 358-60.  In October 2016, Plaintiff decreased her medications "and reported a return of delusional thinking."  Tr. 16, 369-72.  Her "medications were adjusted appropriately" and "[i]n November 2016, [Plaintiff] was noted to be doing well with the adjusted medication and said she is not as tired and felt good."  Tr. 17, 373-76.

In May 2017, Plaintiff "reported having PTSD symptoms and a lot of anxiety as well as depression.  On mental status examination, she had a mildly depressed mood and anxiety and her affect was constricted and mood congruent.  [Plaintiff's] memory was grossly intact and her judgment and insight were fair.  Her thought process and content were within normal limits."  Tr. 16, 327-31, 381-84.[7]

Based upon a review of the medical evidence, the ALJ noted that although Plaintiff "has had consistent mental health treatment since her alleged onset date," "the medical evidence show she has responded well to medication and that her mental status examinations have not been disabling with treatment compliance."  Tr. 17

---

[7] The May 2017 records are the last medical records in the record, although there is a June 5, 2017, notation.  Tr. 328.

Case No. 1:18cv83-MW/CAS

Case 1:18-cv-00083-MW-CAS   Document 21   Filed 12/10/18   Page 14 of 20

Page **14** of **20**

After making a credibility determination, the ALJ provided an additional analysis of some of the evidence.  See Tr. 303, 336-37, 339-40, 348-49, 351-52, 355, 358, 362, 373, 381-82.  The ALJ noted that although Plaintiff had two hospitalizations for mental health symptom exacerbation in 2014, her subsequent treatment records indicated she continued to do well and did not require further hospitalizations through the decision date. Tr. 17.  Plaintiff reported feeling stable with medications in January 2015, and Plaintiff. Reported: "I like the Latuda[.]  I'm more stable and taking the low dose Lithium too."  Tr. 17, 303.  In May 2015, she felt her medications were working "awesome" and her examination was essentially normal except for a flat affect.  Tr. 17, 339-40.  Although the ALJ noted Plaintiff's PTSD symptoms and a lot of anxiety and depression in May 2017, her mental examination revealed only mild depressed mood and anxiety and her affect was constricted and congruent mood, but grossly intact memory, fair judgment, and normal thought process and content were within normal limits.  Tr. 17, 381-82.

The ALJ also considered the opinions of physicians contracted for by the State Agency who "reviewed the evidence and offered their expert opinion that [Plaintiff's] medically determined mental impairments do not cause more than mild to moderate limitations on the [Plaintiff's] ability to

function." Tr. 18; see Tr. 54-63 (Exhibit1A), 65-74 (Exhibit 3A). The ALJ weighed these opinions and gave them "partial weight," noting that after considering updated regulations, "the evidence supporting their opinions, as well as the overall evidence, is consistent with the moderate limitations for the reasons discussed above at Finding 3." Tr. 18; see 20 C.F.R. § 416.927(e)(2)(i)-(iii).[8]

The ALJ considered reports of Plaintiff's mother performing various tasks for Plaintiff such as "cooking, cleaning, doing her laundry and shopping," who also referred to some of Plaintiff's restrictions including that she "does not stand, walk, perform home maintenance, perform yard work or participate in social activities." Id.; see Tr. 223-25. The ALJ concluded this brief discussion: "The restrictions reported by [Plaintiff's mother] are given little weight as they are not entirely consistent with treatment record notes and [Plaintiff's] testimony, which establish a higher level of functioning and moderate symptoms with treatment compliance, including abstinence from substance abuse." Tr. 18-19.

---

[8] An ALJ can assign great weight to State agency physician opinions where the expert opinions are supported by and consistent with the record as a whole. Ogranaja v. Comm'r of Soc. Sec., 186 F. App'x 848, 850-51 (11th Cir. 2006) (unpublished); 20 C.F.R. § 416.927(e)(2)(i) (explaining that State agency medical and psychological consultants are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluations).

The ALJ notes there are <u>Global Assessment of Functioning</u> (GAF)[9] scores in this record "at a level of 50 or below and reflecting serious symptoms" to which the ALJ gave "little weight,"[10] but gave "[s]ignificant weight to GAF scores at 51 and higher reflecting moderate symptoms."

---

[9] The American Psychiatric Association: *Diagnostic and Statistical Manual of Mental Disorders* (DSM-IV-TR) (4th Ed. Text Revision 2000), includes the scale that is primarily used by mental health practitioners. The GAF Scale is used to report "the clinician's judgment of the individual's overall level of functioning" (with regard to only psychological, social, and occupational functioning) and "may be particularly useful in tracking the clinical progress of individuals in global terms, using a single measure." *See* DSM-IV-TR 32-34. The GAF scale is divided into 10 ranges of functioning, each with a 10-point range in the GAF scale. *Id*. *See* <u>Nichols v. Astrue</u>, Case No. 3:11cv409/LC/CJK, 2012 U.S. Dist. LEXIS 119347, at \*26-29 (N.D. Fla. Aug. 7, 2012) (discussing GAF scale). A GAF Scale of 21 to 30 indicates behavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment. DSM-IV-TR 34. A GAF scale rating of 31 to 40 is indicative of some impairment in realty testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. *Id*. A GAF scale rating of 41-50 is indicative of serious symptoms or any serious impairment in social, occupational or school functioning. *Id*.; *see* Tr. 16 n.1 (referring to this scale score). A GAF scale rating of 51 to 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning. *Id.* The "Commissioner has declined to endorse the GAF scale for 'use in the Social Security and SSI disability programs' and has indicated that GAF scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" <u>Wind v. Barnhart</u>, 133 F. App'x 684, 692 n.5 (11th Cir. 2005) (citing 65 Fed. Reg. 50746, 50764-65 (Aug. 21, 2000)). In the Fifth Edition of the *Diagnostic and Statistical Manual of Mental Disorders* (DSM-5) (5th ed. 2013), "[i]t was recommended that the GAF be dropped from DSM-5 for several reasons, including its conceptual lack of clarity (i.e., including symptoms, suicide risk, and disabilities in its descriptors) and questionable psychometrics in routine practice. In order to provide a global measure of disability, the WHO Disability Assessment Schedule (WHODAS) is included, for further study, in Section III of DSM-5 (see the chapter "Assessment Measures")." DSM-5 at 16; *see* <u>Finley v. Colvin</u>, No. 3:12-7908, 2013 WL 6384355, at \*23 n.9 (S.D. W.Va. Dec. 5, 2013) ("It should be noted that in the latest edition of the [DSM], the GAF scale was abandoned as a measurement tool.").

[10] The ALJ specifically referred to two GAF scores of *30* (Oct. 2014), *see* Tr. 16, 311, and *45* (Dec. 2014), *see* Tr. 16, 296, 298, 301, when she was admitted for Baker Act and inpatient psychiatric treatment, respectively. Tr. 16. The record does not

Case No. 1:18cv83-MW/CAS

Tr. 19. The ALJ concluded that "[t]hose scores were assessed at times of treatment compliance, and the moderate ratings are consistent with the claimant's functioning and treatment records with treatment compliance, including abstinence from substance use." *Id*.

Ultimately, the ALJ considered Plaintiff's medically determinable impairments that could reasonably cause some symptoms and limitations, but concluded that "the overall evidence establishes that the testimony regarding the extent of such symptoms and limitations is not fully consistent with the medical and overall evidence." *Id*. Importantly, the ALJ stated:

> However, the claimant's assertions have not been completely dismissed, but rather, have been included in the [RFC] to the extent that they are consistent with the evidence as a whole. Nevertheless, in considering the criteria enumerated in the Regulations and Rulings for evaluating subjective complaints, the overall evidence is not consistent with disabling impairments and symptoms for 12 continuous months since the alleged onset date with treatment compliance.

*Id*.

C.

The ALJ weighed the objective medical evidence, including the extent of Plaintiff's impairments, in making the RFC determination. The ALJ determined that Plaintiff had the RFC to perform a full range of work at all

---

include different GAF scores. Plaintiff does not argue the ALJ erred in this regard. ECF No. 19; *see* ECF No. 20 at 5 n.4 regarding waiver.

Case No. 1:18cv83-MW/CAS

exertional levels but with several non-exertional limitations including limiting Plaintiff "to simple, routine and repetitive tasks performed in a work environment free of fast-paced production requirements involving only simple work related decisions and routine workplace changes" and further limiting Plaintiff "to no interaction with the public, only occasional interaction with coworkers and only occasional supervision."[11]  Tr. 14-15.  Contrary to Plaintiff's argument, the ALJ's reasoned decision supports the conclusion that Plaintiff "can adapt to the rigors of the workplace despite her impairments," and perform her prior relevant work and additional representative unskilled jobs with light to medium exertion.  *Id.*; *see* Tr. 19-20.

It is not for this Court to second-guess the ALJ's findings that Plaintiff's "statements concerning the intensity, persistence and limiting effects" of her impairments "are not entirely consistent with the medical evidence and other evidence in the record."  Tr. 17; *see* Moore, 403 F.3d at 1211.  As noted recently by the Eleventh Circuit, "[a]n ALJ 'must clearly articulate explicit and adequate reasons for discrediting the claimant's allegations of completely disabling symptoms.'  *Dyer v. Barnhart*, 395 F.3d

---

[11] The RFC determination includes more limitations than merely limiting Plaintiff to simple, routine work, or unskilled work.  Tr. 14-15; *see, e.g.,* Tenaglia v. Berryhill, No. 16-11796-GAO, 2017 U.S. Dist. LEXIS 161613, at *13-14 (D. Mass. Sept. 28, 2017).

1206, 1210 (11th Cir. 2005) (internal quotation marks omitted). The ALJ has done so here." <u>Preston v. Comm'r, Soc. Sec. Admin.</u>, No. 18-11712, slip op. at 5 (11th Cir. Dec. 7, 2018) (unpublished).[12]

### D.

Finally, the law defines disability as the inability to do any substantial gainful activity because of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A); 20 C.F.R. §§ 416.905(a), 416.909. The impairment must be severe, making the claimant unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.905-.911. Although Plaintiff has had challenges and difficulties, the issue before the court is whether the decision by the Commissioner that Plaintiff did not meet this standard is adequately supported by the evidence and was made in accordance with proper legal standards. As the court

---

[12] Courts "have affirmed an ALJ's decision that a claimant's testimony as to the alleged levels of pain and symptoms he experienced as not credible where the allegations were inconsistent with activities of daily living, limited use of pain medication, and effectiveness of treatment." <u>Carter v. Comm'r of Soc. Sec.</u>, 411 F. App'x 295 (11th Cir. 2011) (unpublished) (citing <u>Wilson v. Barnhart</u>, 284 F.3d 1219, 1226 (11th Cir. 2002). The ALJ adequately set forth a reasoned rationale with specific record citations that supports the credibility findings.

Case No. 1:18cv83-MW/CAS

finds that to be the case, it is recommended that the decision be affirmed. No error has been shown.

## V.  Conclusion

Considering the record as a whole, the findings of the ALJ are based upon substantial evidence and the ALJ correctly applied the law. Accordingly, it is respectfully recommended that the decision of the Commissioner to deny Plaintiff's application for Social Security benefits be **AFFIRMED** and judgment entered for Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on December 10, 2018.

>s/ Charles A. Stampelos
>**CHARLES A. STAMPELOS**
>**UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

**Within fourteen (14) days after being served with a copy of this Report and Recommendation, a party may serve and file specific written objections to these proposed findings and recommendations. Fed. R. Civ. P. 72(b)(2).  A copy of the objections shall be served upon all other parties.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Fed. R. Civ. P. 72(b)(2).  Any different deadline that may appear on the electronic docket is for the Court's internal use only and does not control.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a Report and Recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.**